# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

**Case Caption:**
Roots Informatics LP, Thurman Brown Consultant LLC, and Thurman Brown Consultant Inc.,
Plaintiffs
v.
[Defendants List – consolidated below]
Defendants

# COMPLAINT – CIVIL CONSPIRACY, INTELLECTUAL PROPERTY INFRINGEMENT, AND UNFAIR COMPETITION

## I. INTRODUCTION

Plaintiffs Roots Informatics LP, Thurman Brown Consultant LLC, and Thurman Brown Consultant Inc. bring this action for civil conspiracy, intellectual property theft, unjust enrichment, willful patent infringement, and unfair competition against a network of corporate and individual actors who operated under a unified commercial enterprise (the "Enterprise") to unlawfully deploy patented orchestration infrastructure owned by Plaintiffs.

## COUNT I: Patent Infringement and Conspiracy – Aggregate Claim Summary

**Jurisdiction**: United States District Court, Southern District of New York
**Patent-in-Suit**: U.S. Patent No. 11,972,849 – "System and Method for Orchestration of AI-Based Workflow Management Across Heterogeneous Data Sources"

# I. Defendant: Microsoft Corporation

**Principal Office:**
One Microsoft Way, Redmond, WA 98052

**Legal Contact:**
Microsoft Corporate, External & Legal Affairs (Attn: Corporate IP Division)

---

## Infringement Summary

Microsoft Corporation has knowingly and willfully infringed U.S. Patent No. 11,972,849 (the "Roots Patent") through its commercial deployment of AI orchestration infrastructure embedded within its enterprise and developer platforms. Core infringing systems include:

- **Azure AI and Azure ML Pipelines** – Leveraging dynamic model orchestration, contextual deployment logic, and modular workflow engines.
- **Dynamics Copilot / M365 Copilot** – Operating with task-aware orchestration across user documents, real-time adaptive model switching, and inference chaining.
- **GitHub Copilot / Copilot X** – Integrating intelligent orchestration engines that route agent behavior, switch models based on context, and monitor user intention.

These components embody Roots' patented orchestration infrastructure which predates Microsoft's implementation and have been deployed without licensing.

---

## Legal Basis

Microsoft is liable under the following federal statutes:

- **35 U.S.C. § 271(a)** – *Direct infringement*: Use and sale of AI systems employing patented orchestration methods.
- **35 U.S.C. § 271(b)** – *Induced infringement*: Encouraging third-party integration of infringing components through developer APIs and platform SDKs.
- **35 U.S.C. § 271(c)** – *Contributory infringement*: Supplying infringing orchestration frameworks used by downstream services (e.g., Azure customers, GitHub developers).

---

## Willfulness

Microsoft has engaged in **willful infringement**. Key facts include:

- The Roots Patent was published and publicly accessible via the **USPTO in December 2023**.
- Microsoft, a sophisticated party with a robust IP review team, had **constructive knowledge** of overlapping claims due to the nature and timing of its Azure AI and Copilot rollouts.

- Public technical whitepapers and architecture diagrams match Roots' patented claims, particularly in model routing, contextual orchestration, and AI agent governance.
- Despite early **public PSAs from Roots Informatics (Q1 2025)** and legal notifications in **Q4 2025**, Microsoft continued to commercialize its orchestration infrastructure.
- No request for licensing, negotiation, or good-faith contact was made—supporting a finding of willful violation under **§ 284**.

## Claim Mapping

| Roots Patent Claim | Infringing Microsoft Component | Overlapping Functionality |
|---|---|---|
| Claim 1: Distributed Orchestration | Azure ML Pipelines | Modular AI routing across regions and systems |
| Claim 3: Model-first Deployment | GitHub Copilot | Context-based model triggering and inference |
| Claim 5: Modular Agent Integration | Microsoft Fabric | Adaptive pipelines embedding multiple AI tools |
| Claim 9: Smart Ingestion & Normalization | Azure Data Factory | Automated ETL pipelines for AI readiness |
| Claim 12: Adaptive Model Switching | M365 Copilot | Dynamic routing based on user behavior and documents |

## Exhibits

| Exhibit | Description |
|---|---|
| **Exhibit A** | Azure and GitHub Copilot Orchestration Diagrams |
| **Exhibit B** | Roots Patent No. 11,972,849 – Full Text |
| **Exhibit D** | Microsoft AI-related Earnings Reports (2024–2026) |
| **Exhibit F** | Timeline of Public PSAs, Industry Notices |
| **Exhibit G** | Patent Knowledge Indicators (LinkedIn, internal reports) |
| **Exhibit H** | Feature Comparison Table: Roots vs Microsoft Orchestration Stack |

## Relief Requested

Plaintiff Roots Informatics LP seeks:

## A. Compensatory Damages

- **$175 million** in unpaid royalties from Q1 2024 to Q1 2026, based on:

- o Direct use of Roots' patented AI orchestration system across Microsoft platforms.
- o Monetization through Azure AI, M365 Copilot, and GitHub Copilot subscriptions.
- o Developer use of orchestration APIs and monetization of downstream tools.

## B. Declaratory and Equitable Relief

- Judicial declaration that Microsoft has infringed the Roots Patent.
- Formal recognition of willful infringement entitling Plaintiff to enhanced damages under **§ 284**.
- Injunctive relief halting further unlicensed use of the patented orchestration infrastructure.

## C. Cease and Desist (With Fair Negotiation Terms)

- Immediate suspension of future unlicensed deployments.
- Court-supervised licensing negotiations to avoid enterprise disruption.
- Good-faith escrow of interim royalties to ensure fairness to both parties.

## D. Attorney's Fees, Costs, and Interest

- Full legal costs, expert witness fees, and pre/post-judgment interest under **35 U.S.C. § 285**.

---

# II. Defendant: Netflix, Inc.

**Principal Office:**
100 Winchester Circle, Los Gatos, CA 95032
**Legal Contact:**
Netflix Legal Department (Attn: IP Litigation Counsel)

**Jurisdiction:**
Subject to SDNY jurisdiction via commercial operations, content licensing, and AI deployment in the Southern District of New York; Netflix maintains content and streaming partnerships, workforce, and media deployments within the District.

---

## Infringement Summary

Netflix has willfully and systematically infringed **U.S. Patent No. 11,972,849**, owned by Roots Informatics LP, through its deployment of model-first orchestration infrastructure across its AI-driven media personalization and production platforms. The infringing systems include:

- **AI-powered recommendation engines** fueled by dynamic model routing and orchestration.
- **Rendering pipelines** that perform intelligent ingestion and real-time personalization using legacy Warner Bros. content.
- **Training data workflows** that utilize multi-model orchestration with adaptive learning layers and orchestration components sourced from Adobe, NVIDIA, and internal stack modules.

These systems materially practice multiple core claims of the Roots Patent—including distributed ingestion, adaptive model routing, orchestration decisioning, and modular AI execution logic—all deployed without license or authorization.

## Detailed Claim Mapping

| Roots Patent Claim | Netflix Platform Component | Infringing Feature |
|---|---|---|
| Claim 1: Distributed ingestion and orchestration | Media ingestion engines | Aggregates Warner Bros. content via automated pipelines |
| Claim 3: Model-first orchestration logic | Personalization engine | Orchestrates ML models prioritized by user context |
| Claim 5: Modular integration of AI agents | Adobe-integrated pipelines | Embeds third-party AI rendering tools via orchestrated layers |
| Claim 9: Contextual normalization | Data curation layer | Uses tagging, classification, and feedback loops |
| Claim 12: Adaptive model execution | Playback engine + content generation | Dynamically shifts rendering/model logic in real time |

## Legal Basis

Netflix is liable for multiple counts of infringement under U.S. patent law:

- **35 U.S.C. § 271(a)** – *Direct infringement* via internal orchestration systems deployed in its AI pipeline and personalization stack.
- **35 U.S.C. § 271(b)** – *Induced infringement* through Adobe and NVIDIA systems integrated into the orchestration flow.
- **35 U.S.C. § 271(c)** – *Contributory infringement* by distributing orchestrated products/services with no substantial non-infringing use.

## Willfulness and Constructive Knowledge

Netflix became aware of the Roots Patent in **early 2025** through:

- Public industry PSAs issued by Roots Informatics (Q1 2025)
- Patent filing disclosures (USPTO publications and citation overlaps)
- Direct references in media coverage and LinkedIn engagement between Roots and Netflix employees

Despite this knowledge, Netflix intensified the deployment of AI-based orchestration and generation systems—particularly those tied to Warner Bros. historical assets—thereby escalating its infringement. This supports a finding of **willful infringement** and enables claims for **enhanced damages under 35 U.S.C. § 284**.

---

## Supporting Exhibits

| Exhibit | Description |
| --- | --- |
| Exhibit A | U.S. Patent No. 11,972,849 (Full Claims) |
| Exhibit B | Netflix AI Infrastructure Whitepapers |
| Exhibit E | Documentation of NVIDIA and Adobe Integration |
| Exhibit G | Public Timeline of Netflix's Knowledge and Decision to Infringe |
| Exhibit J | Internal ML Orchestration Feature Descriptions |

---

## Damages and Relief Sought

### A. Royalties and Economic Loss

- **Estimated Damages: $94 million** in unpaid royalties, based on:
  - Streaming platform revenues attributed to personalization engines
  - Licensing value of the Roots orchestration system if properly integrated
  - AI/ML development and tooling budgets spanning Q1 2024–Q1 2026

### B. Declaratory Relief

- Declaration that Netflix infringed one or more claims of the Roots Patent
- Declaration of willful infringement post-publication and PSA notice

### C. Injunctive Relief

- Immediate cease-and-desist on unlicensed use of infringing orchestration components
- Court-supervised negotiations for a temporary licensing agreement
- Suspension of any new AI deployments based on the patented orchestration until fair compensation is rendered

**D. Equitable Compensation**

- Disgorgement of profits attributable to unlicensed orchestration features
- Recovery of attorneys' fees, expert fees, and case costs

---

## Prayer for Relief

Plaintiff Roots Informatics LP respectfully seeks judgment against Netflix, Inc. as follows:

1. **Compensatory damages** in the form of reasonable royalties exceeding $94 million
2. **Enhanced damages** for willful infringement under 35 U.S.C. § 284
3. **Declaratory judgment** confirming Netflix's infringement
4. **Injunctive relief** with provisions for operational fairness and court-supervised licensing
5. **Costs, interest, and attorneys' fees** as permitted by law

# III. Defendant: OpenAI, Inc.

**Principal Office:**
3180 18th Street, San Francisco, CA 94110
**Legal Contact:**
OpenAI Legal Department (Attn: IP and Commercial Counsel)

**Jurisdiction:**
Subject to jurisdiction in the Southern District of New York based on substantial commercial activity, enterprise deployments, and API access within the District, including via Microsoft and other channel partners operating in New York.

---

## Infringement Summary

OpenAI, Inc. has knowingly developed, deployed, and commercialized an AI infrastructure that infringes one or more claims of **U.S. Patent No. 11,972,849**, owned by Roots Informatics LP. This includes core platform services such as:

- **GPT-4 Turbo**, GPT-3.5 and GPT-V model orchestration stacks
- **Tool/Plugin APIs** with context-driven routing and task delegation
- **Memory APIs and contextual decisioning agents**
- **Custom GPT builders** and multi-agent frameworks

These systems mirror Roots Informatics' patented invention, which protects **pre-AI orchestration architecture** involving:

- Model-first task delegation

- Adaptive routing of inference and external tools
- Distributed memory coordination and contextual logic across modular AI components
- Real-time orchestration of AI agents

OpenAI's offerings perform these steps using orchestration layers, memory systems, and task-oriented APIs that execute Roots' patented claims without license or authorization.

## Claim Mapping

| Roots Patent Claim | OpenAI Platform Feature | Infringing Functionality |
|---|---|---|
| Claim 1: Distributed orchestration | GPT APIs + memory integration | Enables context-aware routing across multiple agent tasks |
| Claim 3: Model-first orchestration | Tool Calling + System Messaging | Orchestrates tool usage based on user and system intent |
| Claim 5: Modular agent control | GPT Plugin framework | Embeds model decisions in extensible agent ecosystems |
| Claim 9: Contextual ingestion & normalization | Memory API | Tracks evolving conversational context for action selection |
| Claim 12: Adaptive task execution | Agent routing stack | Real-time model/tool orchestration based on environment |

## Legal Violations Cited

OpenAI is liable under the following provisions of U.S. patent law:

- **35 U.S.C. § 271(a)** – *Direct infringement* through the sale and deployment of orchestration-based systems (GPT API, ChatGPT, Plugins, Memory)
- **35 U.S.C. § 271(b)** – *Induced infringement* by promoting developer and partner use of orchestration features that practice Roots' patented architecture
- **35 U.S.C. § 271(c)** – *Contributory infringement* by distributing components (e.g., agent APIs, plugin ecosystems) that have no substantial non-infringing use

## Willfulness and Constructive Knowledge

OpenAI had **constructive and actual knowledge** of Roots Informatics' Patent and its orchestration claims by no later than **early 2025**, through:

- Published industry-wide PSAs by Roots Informatics
- Linked patent claim coverage of agentic and orchestration-based AI

- Citation overlap and sector-wide discourse on orchestration as core infrastructure

Rather than engage in licensing negotiations, OpenAI scaled its commercial offerings—including Memory APIs, multi-agent routing, and enterprise GPT orchestration workflows—knowing that they fell within the protected orchestration layer described in Roots' issued claims.

This constitutes **willful infringement**, enabling enhanced damages under **35 U.S.C. § 284**.

## Supporting Exhibits

| Exhibit | Description |
| --- | --- |
| Exhibit A | U.S. Patent No. 11,972,849 (Roots Informatics Patent) |
| Exhibit B | OpenAI technical documentation on GPT plugins, tool use, and orchestration |
| Exhibit C | Developer API diagrams, SDK overviews |
| Exhibit F | Timeline of PSA publications and OpenAI's continued expansion of orchestration tools |

## Damages & Relief Sought

### A. Royalties and Compensation

- **Estimated damages:** $112 million in unpaid royalties
  Based on:
  - GPT API utilization (GPT-4 Turbo, Plugin memory ecosystem)
  - Enterprise orchestration deployments
  - Monetization of orchestration-based developer ecosystems and ChatGPT Plus

### B. Declaratory Relief

- Judicial declaration of infringement of one or more claims of U.S. Patent No. 11,972,849
- Recognition of willful infringement post-notice

### C. Injunctive Relief

- Cease-and-desist order on continued unlicensed use of orchestration-layer components
- Stay enforcement for 60 days to enable temporary licensing under court supervision

### D. Equitable Relief

- Court-supervised licensing arrangement or royalty escrow
- Audited usage reports across OpenAI deployments using orchestration workflows

## Prayer for Relief

Plaintiff Roots Informatics LP respectfully requests judgment against OpenAI, Inc. as follows:

1. **Compensatory damages** in the form of reasonable royalties exceeding $112 million
2. **Enhanced damages** under 35 U.S.C. § 284 for willful infringement
3. **Declaratory judgment** confirming infringement of U.S. Patent No. 11,972,849
4. **Injunctive relief** with provisions for temporary licensing or leasing
5. **Attorneys' fees, court costs, and pre/post-judgment interest**

## IV. NVIDIA Corporation

**Infringement Summary:**

NVIDIA Corporation has developed and commercialized integrated AI infrastructure systems—including the **Rubin Rack**, **DGX systems**, **ML stack orchestration software**, and associated **Foundry/NeMo frameworks**—that directly implement orchestration functionalities protected by U.S. Patent No. 11,972,849 (the "Roots Informatics Patent"). These systems include distributed orchestration logic, memory-aware coordination layers, and contextual model/task routing—each of which mirror the Roots patent's claims covering model-first orchestration and adaptive, real-time infrastructure control.

Specifically, NVIDIA's Rubin platform is presented as a **rack-scale AI computer** that consolidates GPU/CPU/memory/network/switching into a unified orchestration plane. These components are designed and marketed as a single, integrated decision infrastructure—prioritizing reliability, workload routing, and inferencing coordination, all in line with Roots' patented invention.

NVIDIA's DGX SuperPOD and DGX Cloud services further offer managed orchestration of AI workflows across distributed systems, with APIs and monitoring tools that perform dynamic scheduling, model adaptation, and failover orchestration. The **NeMo Retriever and Memory systems**, as demonstrated in NVIDIA's developer materials and CES 2026 keynote, emphasize contextual orchestration of inference tasks—further supporting claim overlap.

**Legal Basis:**
NVIDIA is liable for:

- **Direct infringement under 35 U.S.C. § 271(a)** for making, using, selling, and offering systems and services that implement patented orchestration architecture;
- **Contributory infringement under § 271(c)** for supplying essential infrastructure components—including Rubin Rack, orchestration APIs, and inference engines—that form material parts of patented systems and have no substantial non-infringing use;

- **Induced infringement under § 271(b)** by enabling and encouraging customers, integrators (e.g., OpenAI, Meta, Amazon), and research partners to configure and deploy orchestration workflows that practice Roots' patented claims.

**Willfulness and Knowledge:**

NVIDIA had constructive and actual knowledge of the Roots Informatics Patent as early as 2024. Public PSAs, industry-wide patent communications, and legal notices were published in 2025. Despite this, NVIDIA launched Rubin, integrated NeMo's orchestration tooling, and entered into orchestration-focused partnerships (e.g., with OpenAI and healthcare AI vendors) in 2025–2026—without seeking license or permission.

NVIDIA's continued deployment of infringing orchestration systems constitutes **willful infringement**, entitling Plaintiffs to **enhanced damages under 35 U.S.C. § 284**.

**Claim Mapping (Representative Overlaps):**

| Roots Patent Claim | NVIDIA System Component | Infringing Functionality |
|---|---|---|
| Claim 1 | Rubin Rack + DGX Orchestration Stack | Cross-node orchestration and memory-aware routing |
| Claim 3 | NeMo Retriever + Context-Aware AI APIs | Contextual inference routing logic |
| Claim 5 | DGX SuperPOD AI Scheduler | Modular orchestration across multiple AI agents |
| Claim 7 | System Monitoring & Failover | Auditable real-time fallback logic |
| Claim 9 | Inference Preprocessors + Retriever | Intelligent ingestion and memory normalization |
| Claim 12 | NeMo + Foundry Tooling | Real-time model switching and adaptive coordination |

**Exhibits:**

- **Exhibit A** – Roots Informatics Patent (U.S. Patent No. 11,972,849)
- **Exhibit B** – Industry-wide PSA / Notice to NVIDIA (Q4 2025)
- **Exhibit C** – Technical whitepaper: Rubin Rack + DGX Orchestration Infrastructure
- **Exhibit D** – NVIDIA CES 2026 Keynote (context-first orchestration claims)
- **Exhibit E** – Developer Documentation: NeMo Toolkit, Retriever API, DGX Cloud

**Royalty Estimate**:
$135 million (Datacenter stack licensing and H100 Tensor Core integration under third-party AI platforms)

## V. Amazon Web Services (AWS)

**Infringement Summary:**

Amazon Web Services, Inc. (AWS) has engaged in the willful and ongoing infringement of U.S. Patent No. 11,972,849 ("the Roots Informatics Patent") through its development, marketing, and operation of AI services including **Amazon SageMaker**, **Amazon Bedrock**, and **Amazon HealthLake**. These services use modular orchestration layers to manage model execution, data ingestion, workflow automation, and adaptive task routing—each of which fall squarely within Roots Informatics' patented orchestration architecture.

AWS promotes these systems as providing "end-to-end AI/ML infrastructure," including orchestration of generative AI models, inference pipelines, and clinical data normalization—all using intelligent switching, rule-based transformation, and real-time adaptation capabilities that reflect Roots' patent claims

## Legal Basis for Infringement

AWS is liable under the following statutes:

- **35 U.S.C. § 271(a):** Direct infringement by making, using, offering, and selling systems that embody Roots' patented orchestration mechanisms;
- **§ 271(b):** Induced infringement by encouraging and facilitating client and partner use of patented orchestration methods (via Bedrock APIs, SageMaker Pipelines, and HealthLake workflows);
- **§ 271(c):** Contributory infringement by providing infrastructure tools (e.g., model routers, schema normalizers, inference orchestrators) with no substantial non-infringing uses;
- **§ 284:** Willful infringement post-patent issuance and public notices, justifying treble damages.

## Willfulness and Knowledge

AWS had constructive and actual notice of the Roots Informatics Patent, beginning no later than Q4 2025, through:

- Published PSAs to industry actors (Exhibit B),
- Direct engagement efforts by Roots Informatics,
- Public LinkedIn disclosures tagging AWS engineers and product leads,
- Legal briefings sent to AWS Corporate Counsel in November 2025.

Despite knowledge, AWS continued deploying and expanding orchestration systems that practice patented claims—including the 2026 launch of new adaptive routing in Bedrock and HealthLake expansions.

This post-notice conduct constitutes **willful infringement**, qualifying for **enhanced damages** under § 284.

---

## Claim Mapping: Roots Informatics vs. AWS

| Roots Patent Claim | AWS Component | Infringing Functionality |
|---|---|---|
| Claim 1 | SageMaker Pipelines | Distributed orchestration of model training and inference |
| Claim 3 | Bedrock Inference Orchestration | Context-aware routing of LLMs and API outputs |
| Claim 5 | HealthLake Structured Ingestion | Modular workflows that normalize medical data and direct it to downstream AI modules |
| Claim 9 | DataWrangler + Feature Store | AI-assisted ingestion and smart transformation for ML-readiness |
| Claim 12 | SageMaker Model Monitor + Bedrock Agents | Real-time adaptation to model output quality and user context |

---

## Exhibits Supporting Infringement

| Exhibit | Description |
|---|---|
| Exhibit A | Roots Informatics Patent (U.S. Patent No. 11,972,849) |
| Exhibit B | Public Patent Awareness PSA issued Q4 2025 |
| Exhibit C | AWS Developer Docs: Bedrock Inference Orchestration APIs |
| Exhibit D | Technical Whitepaper: SageMaker Orchestration Framework |
| Exhibit E | AWS Blog: "Real-time Model Monitoring and Routing with SageMaker" |
| Exhibit F | Roots Claim Comparison Chart: AWS vs. Patent |
| Exhibit G | Amazon HealthLake Launch Materials (highlighting adaptive ingestion and orchestration logic) |

---

## Damages and Relief Requested

- **Reasonable royalties** for all infringing uses from December 2023 to present (calculated based on model runtime, inference volume, orchestration endpoints, and comparable platform licensing structures);
- **Disgorgement** of profits attributable to infringing orchestration features across AWS AI services;
- **Enhanced damages** for willful infringement post-2025 notices;
- **Declaratory relief** affirming AWS's ongoing infringement;
- **Court-supervised licensing** or interim lease terms to avoid disruption while upholding Roots' exclusive rights;
- **Attorneys' fees, expert witness costs, and all litigation-related expenses.**

**Damages**:
$148 million royalties and damages requested

---

# VI. Meta Platforms, Inc.

**Infringement Summary:**
Meta Platforms, Inc. has directly and willfully infringed U.S. Patent No. **11,972,849** ("the Roots Informatics Patent") through its development, deployment, and commercialization of **Meta AI's LLaMA orchestration systems**, the **CICERO negotiation models**, and related agent-routing architectures. These systems implement distributed orchestration, model prioritization, contextual data handling, and adaptive response behaviors—all of which are governed by Roots' pre-AI patented orchestration layer.

The use of multi-agent architectures, decision routers, and fallback protocols in LLaMA fine-tuning, as well as real-time behavioral modeling in CICERO, mirrors Roots Informatics' patented model-first orchestration logic.

---

# Legal Basis for Infringement

- **35 U.S.C. § 271(a):** Direct infringement through Meta's creation, use, and promotion of orchestration systems integrating multiple AI agents and data pipelines.
- **§ 271(b):** Induced infringement through Meta's open-source distribution of LLaMA and orchestration frameworks encouraging third-party deployment.
- **§ 284:** Enhanced damages for **willful infringement** post-publication of Roots' patent and after receiving public notice through industry-wide PSAs and media engagement.

---

# Claim Mapping: Roots Informatics vs. Meta Platforms

| Roots Patent Claim | Meta Component | Infringing Functionality |
|---|---|---|
| Claim 1 | LLaMA Orchestration Engine | Distributed inference routing across agents |
| Claim 3 | CICERO Policy Layer | Context-based orchestration of communication and decisions |
| Claim 5 | FAIR Autonomy Agents Framework | Modular task decomposition and workflow orchestration |
| Claim 7 | Meta AI Evaluation Infrastructure | Real-time tracking and auditable decision logs |
| Claim 12 | LLaMA + CICERO Adaptive Memory | Switching model behaviors based on user and negotiation state |

## Supporting Exhibits

| Exhibit | Description |
|---|---|
| Exhibit A | U.S. Patent No. 11,972,849 – Roots Informatics Patent |
| Exhibit B | Q4 2025 PSA issued to Meta Platforms |
| Exhibit C | Meta AI Blog: LLaMA Deployment Systems |
| Exhibit D | Meta CICERO Technical Paper (Nature, 2025) |
| Exhibit E | Roots vs. Meta Claim Chart |
| Exhibit F | LinkedIn posts by Meta AI leadership referencing orchestration architecture |
| Exhibit G | GitHub documentation of Meta's multi-agent orchestration stack |
| Exhibit H | Public statements regarding LLaMA as open infrastructure for orchestration frameworks |

## Damages and Relief Sought

### A. Royalties and Financial Damages

- Meta Platforms has unlawfully generated commercial and institutional value through patented orchestration methods without licensing or authorization.
- **Plaintiff seeks $92 million in unpaid royalties** for the use of the patented invention in connection with:
  - Deployment of LLaMA across Meta's platforms;
  - CICERO model's integration into Meta AI's strategic development;
  - Distribution of orchestration tools enabling others to replicate infringing workflows;

  o  AI governance and inference-routing systems in both commercial and research applications.

**B. Enhanced Damages for Willfulness**

- Despite clear notice through public channels and industry publications, Meta has continued to develop, release, and distribute systems infringing on Roots Informatics' patent.
- This continued post-notice conduct constitutes **willful infringement**, qualifying for **enhanced damages under § 284**.

**C. Declaratory and Injunctive Relief**

- Declaration of infringement and violation of 35 U.S.C. § 271;
- Immediate cease of unlicensed use or commercial distribution;
- Option for a **court-supervised licensing framework** to avoid public disruption while enforcing lawful protections.

**D. Additional Relief**

- Pre- and post-judgment interest;
- All litigation costs and attorneys' fees;
- Order requiring Meta to **audit use** of infringing orchestration tools and escrow associated revenues during litigation.

**Damages**:
$92 million sought in unpaid royalties

---

# VII. Palantir Technologies Inc.

**Infringement Summary:**

Palantir Technologies Inc. is **willfully and directly infringing** U.S. Patent No. **11,972,849** (the "Roots Informatics Patent") through its **Foundry platform**, including components such as **Ontology**, **Pipeline Builder**, **Operational AI**, and **Decision Graphs**. These systems implement model-first orchestration logic, real-time data normalization, auditable decision-making infrastructure, and adaptive workflows—each of which overlaps with Roots Informatics' pre-AI orchestration claims.

Palantir's deployment of Foundry across sectors (defense, health, finance, and supply chain) demonstrates commercial exploitation of an architecture that mirrors the exact logic flow, modular design, and AI orchestration described in Roots' issued patent.

## Legal Basis for Infringement

- **35 U.S.C. § 271(a):** Direct infringement by use and commercialization of Foundry and its orchestration systems.
- **35 U.S.C. § 271(b):** Induced infringement by promoting integration of infringing tools into government and enterprise environments.
- **35 U.S.C. § 284:** Enhanced damages due to **willful and knowing use** of patented orchestration methods after Roots issued multiple public notices and formal PSAs.

## Claim Mapping: Roots Informatics vs. Palantir Foundry

| Roots Patent Claim | Palantir Component | Infringing Functionality |
| --- | --- | --- |
| Claim 1 | Ontology + Pipeline Builder | Distributed data orchestration and transformation |
| Claim 3 | Operational AI Layer | Model-first routing of data based on AI logic |
| Claim 5 | Code Workflows + Integration | Modular dynamic workflows with embedded agents |
| Claim 7 | Decision Graphs + Audit Logs | Real-time auditable decision infrastructure |
| Claim 9 | Ontology & Ingestion APIs | Contextual metadata mapping and AI normalization |
| Claim 12 | Edge AI + Event-Driven Pipelines | Adaptive orchestration based on external conditions |

## Supporting Exhibits

| Exhibit | Description |
| --- | --- |
| Exhibit A | U.S. Patent No. 11,972,849 (Roots Informatics) |
| Exhibit B | Roots' 2025 Public Sector Announcements and Notices to Palantir |
| Exhibit C | Palantir Foundry Product Documentation |
| Exhibit D | Palantir Architecture Diagrams (from public whitepapers) |
| Exhibit E | Roots-to-Foundry Claim Mapping Table |

| Exhibit | Description |
| --- | --- |
| Exhibit F | Timeline of Willfulness (2025–2026) |
| Exhibit G | LinkedIn and media statements by Palantir AI executives |
| Exhibit H | Procurement materials demonstrating Foundry's orchestration architecture sold to public and private clients |

## Damages and Relief Sought

### A. Royalties and Financial Compensation

- Palantir's widespread deployment of Foundry with infringing orchestration capabilities has resulted in significant unjust enrichment.
- Plaintiff seeks **$117 million in unpaid royalties**, covering:
  - Commercial use of patented orchestration logic across verticals;
  - Government deployments with procurement involving Roots-aligned functionality;
  - Open promotion of proprietary orchestration architecture without licensing.

### B. Enhanced Damages for Willfulness

- Palantir was publicly notified of Roots' claims and patent status in Q4 2025.
- No licensing discussion or remedy was initiated, and commercialization expanded, making the infringement **willful and knowing**, justifying **treble damages under § 284**.

### C. Declaratory and Injunctive Relief

- Judicial declaration of infringement;
- Immediate prohibition of unlicensed use or further deployment of the infringing orchestration layer;
- Optional **court-administered licensing window** to prevent disruption to existing services.

### D. Additional Relief

- Costs of suit, including attorney's fees;
- Pre- and post-judgment interest;
- **Order requiring revenue audit and escrow of revenues** attributable to infringing Foundry components.

## Broader Context & Utah Defendant Relevance

Roots Informatics has also alleged a **conspiracy to dismantle and repurpose its IP** originating from Utah-based actors (see Utah filings). Palantir's rapid product alignment with Roots' IP and timing of its Foundry expansions raise serious questions about **downstream access or knowledge** of misappropriated technical frameworks—potentially implicating further coordinated infringement with parties previously identified in Roots' Utah litigation.

These overlapping behaviors justify:

- **Inclusion of Utah-based defendants and evidence** in SDNY proceedings;
- Further discovery into indirect or derivative use of Roots' IP in Palantir's architecture.

**Royalty Claim**:
$61 million (Public sector contracts using Foundry post-patent issuance)

---

## VIII. Databricks, Inc.

**Infringement Summary:**

Databricks, Inc. is directly and willfully infringing U.S. Patent No. **11,972,849** (the "Roots Informatics Patent") through its **Unity Catalog**, **MLflow**, and related orchestration systems integrated within the Databricks Lakehouse Platform.

These tools orchestrate **context-aware ingestion**, **modular AI model deployment**, **adaptive resource allocation**, and **real-time decisioning workflows**—mirroring Roots' patented orchestration layer that predates current large-scale AI infrastructure.

Databricks' offerings are marketed as end-to-end orchestration frameworks, incorporating model training, scoring, drift detection, and inference adaptation within dynamic, data-driven pipelines. These features align precisely with Roots' claim set.

---

## Legal Basis for Infringement

- **35 U.S.C. § 271(a):** Direct infringement through the development, marketing, and sale of Unity Catalog and MLflow pipelines.
- **35 U.S.C. § 271(b):** Induced infringement by supporting customer implementations using infringing orchestration methods.
- **35 U.S.C. § 284:** Willful infringement evidenced by continued use and product expansion despite industry-wide PSA notifications in late 2025.

---

## Claim Mapping: Roots Informatics vs. Databricks Unity Catalog / MLflow

| Roots Patent Claim | Databricks Component | Infringing Functionality |
|---|---|---|
| Claim 1: Distributed orchestration | MLflow Pipelines + Unity Catalog | Distributed orchestration of data, models, and pipelines with lineage and governance |
| Claim 3: Model-first orchestration logic | MLflow Models | Modular model abstraction, deployment decisions made independently of source code |
| Claim 5: Dynamic workflow orchestration | MLflow + Delta Live Tables | Real-time orchestration using streaming + batch ingestion and transformation logic |
| Claim 9: AI-ready ingestion + normalization | Auto Loader + Schema Inference | Contextual ingestion and normalization of structured/unstructured inputs |
| Claim 11: Live model adjustment via feedback | Lakehouse AI Monitoring | Performance-driven model tuning and behavior adaptation based on real-time feedback |
| Claim 12: Context-aware model routing | Feature Store + Runtime APIs | Dynamic selection of models and resources based on context and real-time inputs |

## Supporting Exhibits

| Exhibit | Description |
|---|---|
| Exhibit A | Roots Informatics Patent Document |
| Exhibit B | 2025 PSA Notices Sent to Industry (including Databricks) |
| Exhibit C | Databricks Whitepaper on Unity Catalog + MLflow Architecture |
| Exhibit D | Product Documentation and SDK Usage Illustrating Infringement |
| Exhibit E | Technical Comparison Table: Roots Claims vs. Databricks Functionality |
| Exhibit F | LinkedIn + Press Statements by Databricks Executives |
| Exhibit G | Revenue attribution report for MLflow-based deployments |
| Exhibit H | Internal industry benchmarks on licensing for orchestration IP |

## Damages and Relief Sought

### A. Royalties and Compensation

- Plaintiff seeks **$88 million** in unpaid royalties derived from Databricks' global MLflow and Unity Catalog deployments tied to orchestration features.
- Damages calculated based on:
  - Number of customer workflows utilizing orchestrated model routing
  - Volume of AI-generated workload tied to infringing pipeline features
  - Benchmark licensing for orchestration platforms in comparable enterprise sectors

**B. Enhanced Damages for Willful Infringement**

- Roots Informatics issued multiple public notices and legal alerts regarding the orchestration patent in 2025.
- Databricks continued to expand MLflow orchestration use across industries without seeking a license or entering negotiation.
- Plaintiff seeks **treble damages under § 284** for knowing and willful infringement.

**C. Declaratory and Injunctive Relief**

- Judicial declaration of infringement
- Preliminary and permanent injunction on further unlicensed use of infringing orchestration architecture
- A court-approved **interim licensing structure** to ensure continuity of service and industry operations without ongoing rights violations

**D. Additional Relief**

- Pre- and post-judgment interest
- Legal fees and litigation costs
- Escrow of infringing revenues until license resolution

---

## Relevance to Utah Defendants and Broader Litigation Scope

Roots Informatics' Utah-based litigation has already demonstrated a conspiracy to misappropriate orchestration IP and fraudulently dissolve corporate ownership structures. The presence of **Databricks as a downstream beneficiary**, operating systems nearly identical to Roots' core IP, raises the prospect of **indirect access or technical replication** tied to earlier misconduct.

Further discovery may be warranted to determine whether Databricks:

- Benefited knowingly or unknowingly from IP misappropriated in Utah
- Collaborated with intermediaries already implicated in the Roots conspiracy
- Expanded orchestration features immediately following dissemination of stolen IP or industry knowledge

These facts support inclusion of Databricks in the broader **federal and state litigation strategy**, both as a **direct infringer** and as a potential **third-party beneficiary of unlawful conduct**.

**Damages**:
$77 million royalties, 2024–2026

---

## IX. Warner Bros. Discovery / Beechtree Diagnostics LLP & Beechtree Molecular LLC

## Infringement and Conspiracy Summary

**Warner Bros. Discovery (WBD)** directly enabled downstream patent infringement by providing proprietary content libraries that were repurposed by **Netflix, Inc.** as ingestion material for its AI orchestration engines. These engines utilize dynamic model pipelines, automated personalization frameworks, and metadata-driven training systems that match protected claims under the **Roots Informatics Patent No. 11,972,849**.

**Beechtree Diagnostics LLP and Beechtree Molecular LLC**, formed after the unlawful dissolution attempt of Roots Informatics, launched diagnostic analytics and AI-assisted health products built upon infrastructure stolen from Roots. These include ingestion pipelines, predictive scoring engines, and context-aware dashboards—functionality derived directly from the infringing reuse of Roots' patented architecture.

## Legal Basis

- **35 U.S.C. § 271(a):** Direct infringement by Beechtree through AI-based orchestration systems in healthcare and diagnostics.
- **35 U.S.C. § 271(b):** Induced infringement and knowing collaboration in use of unlicensed IP (Warner Bros. via Netflix ingestion fuel).
- **35 U.S.C. § 271(c):** Contributory infringement by Beechtree through unauthorized replication of Roots' platform architecture.
- **Conspiracy and Unjust Enrichment:** Parties knowingly participated or benefited from orchestration infrastructure developed by Roots Informatics, and illegally replicated it for profit.
- **Restatement (Third) of Restitution § 43:** Entitlement to recovery of benefit conferred without license or compensation.
- **Fraudulent Misappropriation:** Via direct collaboration with individuals and entities named in prior Utah and federal filings.

## Key Conduct and Role in Broader Scheme

| Entity | Role in Conspiracy / Infringement |
| --- | --- |
| **Warner Bros. Discovery** | Provided ingestion source material for infringing orchestration systems deployed by Netflix and collaborators. Did not audit, restrict, or license downstream use despite knowledge of orchestration disputes. |

| Entity | Role in Conspiracy / Infringement |
|---|---|
| **Beechtree Diagnostics LLP / Molecular LLC** | Illegally rebranded and deployed AI infrastructure copied from Roots. Built health analytics, decision support dashboards, and ingestion engines using protected technology from dissolved Roots entity. Received technical support from co-defendants involved in IP theft. |

## Supporting Exhibits

| Exhibit | Description |
|---|---|
| Exhibit A | Roots Informatics Patent (11,972,849) |
| Exhibit B | 2023–2025 Notices of Claim and IP Registration Filings |
| Exhibit C | Evidence of Netflix ingestion pipelines using WBD content |
| Exhibit D | Utah Complaint showing fraudulent dissolution of Roots |
| Exhibit E | Internal pitch decks from Beechtree reusing Roots IP |
| Exhibit F | Founders Transcript implicating Beechtree co-founders |
| Exhibit G | WBD-Netflix Collaboration Announcements (2024–2025) |
| Exhibit H | Beechtree website screenshots showing replicated platform UI |
| Exhibit I | Forensic IP overlap analysis between Roots and Beechtree systems |

## Claim Mapping (Beechtree)

| Roots Patent Claim | Infringing Beechtree Feature |
|---|---|
| Claim 1: Distributed ingestion and orchestration | Lab-to-platform ingestion infrastructure for diagnostics |
| Claim 3: Model-prioritized orchestration | Real-time diagnostic scoring engines |
| Claim 5: Modular agent workflows | Decision support systems for clinicians |
| Claim 9: Contextual normalization | EHR-compatible data pipelines |
| Claim 12: Adaptive model control | Dashboard tailoring based on patient/context signals |

## Damages and Royalties Sought

### A. Royalty Avoidance

- Beechtree and WBD have unjustly benefited from Roots Informatics' patented orchestration layer.
- **$25 million** in avoided royalties estimated from:
  - Market share obtained using stolen technology
  - Diagnostic test volume routed through infringing pipelines

- o  Monetization of enriched patient insights without licensing
- o  Collaborative data commercialization without attribution

**B. Equitable Relief**

- Declaratory finding of infringement and conspiracy
- Escrow of ongoing profits derived from infringing systems
- Court-ordered restitution of misappropriated IP
- Cease and desist on unlicensed use of orchestrated healthcare platforms
- Judicial supervision of any continued operations using Roots-derived platforms pending licensing

---

## Relevance to Utah Defendants and Forum Bias

- Beechtree was created by **former Roots collaborators**, including **Mike Isom**, **Michael Murano**, **Justin Peck**, and **Nathan Peters**, all currently subject to action in Utah for conspiracy and IP misappropriation.
- **Spencer Fane LLP** and **Gregory Lunt**, attorneys linked to the fraudulent dissolution of Roots, actively facilitated IP transfers later incorporated into Beechtree's systems.
- Given the documented history of collusion in Utah state filings, federal litigation in **Southern District of New York (SDNY)** is necessary to avoid home court bias and ensure fair adjudication.
- Consolidating all claims in SDNY provides the federal court with a **clear view of interconnected conspiracies**, fraudulent formation of successor companies, and willful use of protected infrastructure by enterprise-level defendants.

---

## Prayer for Relief (Specific to WBD & Beechtree)

Roots Informatics respectfully seeks judgment against Warner Bros. Discovery and Beechtree Diagnostics LLP / Molecular LLC for:

1. $25 million in compensatory damages and unpaid royalties
2. Declaratory judgment of infringement and unjust enrichment
3. Permanent injunction on continued use of infringing technology
4. Court-supervised licensing for essential orchestration features
5. Equitable disgorgement of all profits obtained from infringing use
6. All costs, attorney's fees, and other relief as deemed just

---

# X. United States Government Use (28 U.S.C. § 1498(a))

**Agencies Involved:**

- U.S. Department of Defense (DoD)
- U.S. Department of Health and Human Services (HHS)
- U.S. Department of Veterans Affairs (VA)
- U.S. Department of Justice (DOJ)
- U.S. Centers for Disease Control and Prevention (CDC)

**Contractor Systems Implicated:**

- **Palantir Foundry** (federated data orchestration in HHS, CDC)
- **AWS GovCloud Health Services** (storage, ML inference, model hosting)
- **Booz Allen Hamilton Analytics Platforms** (test data analytics and modeling support)

## Legal Basis

This count arises under **28 U.S.C. § 1498(a)**, the exclusive remedy for patent infringement committed **by or for the United States**. Roots Informatics LP asserts that U.S. agencies and their contractors have, without license or authorization, used patented technology covered under **U.S. Patent No. 11,972,849**, including:

- Multi-source lab test ingestion
- Contextual normalization and scoring
- Combined test result visualizations
- Federated user access with role-based display logic
- Adaptive orchestration of clinical workflows and AI-based routing

These systems are functionally equivalent to Roots' patented pre-AI orchestration framework.

## Claims Mapping Overview

| Roots Patent Claim | Federal System Equivalent |
| --- | --- |
| Claim 1: Distributed ingestion + orchestration | HHS and VA health data pipelines (via Palantir/AWS) |
| Claim 5: Modular orchestration of data streams | DoD visualization platforms (e.g., DHA/CDC reporting) |
| Claim 9: Normalization + scoring of health data | BOP, VA, and CDC test scoring/reporting modules |
| Claim 12: Role-based display and adaptive logic | VA EHR tools + CDC epidemiological dashboards |

## Government Use Without License

The patented technology has been used:

- **By or for** the U.S. Government, either through internal agency systems or vendor platforms under procurement contracts
- Under **government authorization and consent**, including FAR 52.227-1 clauses in integrator contracts with Palantir, AWS, and Booz Allen
- In **national health and justice infrastructure**, including federal COVID dashboards, VA medical platforms, and Bureau of Prisons analytics

## Willful Use / Knowledge

Upon information and belief, the U.S. Government was on notice of the Roots patent through:

- Federal Register and USPTO publications (constructive notice)
- Outreach to contractors via public PSAs
- Industry whitepapers and technical briefings featuring orchestration architectures overlapping with the Roots framework
- Continued system expansion despite warnings and parallel litigation

## Exhibits

| Exhibit | Description |
|---|---|
| Exhibit A | Roots Informatics Patent No. 11,972,849 |
| Exhibit D | Public procurement documents showing use of orchestration systems |
| Exhibit E | Technical whitepapers from Palantir and Booz Allen submitted to HHS/CDC |
| Exhibit G | FAR contract clauses reflecting "authorization and consent" |
| Exhibit H | Timeline showing federal use post-2023 patent issuance |

## Damages & Relief Sought

Under **§ 1498(a)**, Roots Informatics LP seeks **"reasonable and entire compensation"**, calculated as:

- **Estimated damages: $280 million**, based on:
    - Volume and duration of federal use
    - Agency-wide deployment scale
    - Contractor fees for equivalent systems

      o   Benchmarked royalty rate from commercial deployments

---

## Prayer for Relief – U.S. Government (Court of Federal Claims)

Roots respectfully requests that the Court of Federal Claims award:

1. **Reasonable and entire compensation** under 28 U.S.C. § 1498(a)
2. **Recovery of allowable costs and legal fees**
3. **Pre- and post-judgment interest**
4. **All further relief** as justice may require

# XI. UTAH DEFENDANTS & VENUE BIAS

## Entities and Individuals Involved

- **Corporate Entities:**
  - *Beechtree Diagnostics LLP*
  - *Shadow LLCs created to exploit dissolved Roots assets*
- **Individual Defendants:**
  - *Justin Peck*
  - *Mike Isom*
- **Law Firms and Attorneys:**
  - *Spencer Fane LLP*
  - *Scott Awerkamp (Partner, Spencer Fane)*
  - *Gregory Lunt (Former counsel involved in patent filings)*

---

## A. Legal Basis for Joinder

These defendants are properly joined under **Federal Rules of Civil Procedure Rule 20(a)(2)** because:

- They acted jointly and severally in a **coordinated conspiracy** to dissolve Roots Informatics;
- Their actions resulted in direct infringement and commercial misappropriation of U.S. Patent No. 11,972,849;
- They are **factually and legally intertwined** with the claims against downstream beneficiaries (e.g., Warner Bros., Netflix, Palantir, AWS);
- Judicial economy and consistent adjudication demand that they be included in the same proceeding.

## B. Infringing Conduct and Conspiratorial Role

- **Fraudulent Dissolution:** Peck and Isom filed a Certificate of Dissolution rejected by the Utah Secretary of State but misrepresented as valid to divert IP rights.
- **Patent Reassignments:** Lunt and Awerkamp facilitated **fraudulent reassignments**, enabling Beechtree to commercialize Roots' patent infrastructure without consent.
- **Orchestration Misuse:** Beechtree's health analytics platform uses Roots' orchestration model, including lab aggregation, AI-based scoring, and dashboards—**identical to the patented framework.**
- **Evidence of Intent:** Founders Transcript (Appendix F), Internal Emails (Appendix E), and Pitch Decks (Appendix G) show full awareness of Roots' IP and steps taken to circumvent its ownership.

## C. Venue Conflict – Utah Bias Concerns

- **Repeat Dismissals:** Utah courts have repeatedly deflected or delayed proceedings touching on IP ownership and corporate sabotage involving these defendants.
- **Political Entanglements:** Spencer Fane LLP has close ties to **state procurement channels** and has represented interests overlapping with Utah's public-private AI initiatives.
- **State Investment in AI:** Utah's **investment in AI + health platforms** creates a material risk of judicial bias, particularly given the rising role of Beechtree Diagnostics in local contracting pipelines.
- **Incentive Misalignment:** Allowing the Utah venue to retain jurisdiction would **undermine the fairness of adjudication** by insulating state-aligned actors from federal IP scrutiny.

**For these reasons**, Plaintiffs assert jurisdiction in SDNY as a **neutral forum**, invoking federal question jurisdiction (28 U.S.C. § 1331) and supplemental jurisdiction under § 1367.

## D. Relief Sought

Plaintiffs seek the following remedies against the Utah-based defendants:

- **$1.1 Billion in Compensatory and Punitive Damages**
  For fraudulent IP diversion, unlawful commercialization, and reputational harm
- **Full Royalties and Back-Pay**
  From commercial deployments using Roots IP from 2023 onward
- **Mandatory Accounting**
  Disclosure of all revenues derived from infringing technology

- **Injunctive Relief**
  Enjoining further use of Roots' patented IP without an executed license
- **Structural Licensing Agreement**
  To cover past, present, and future usage of orchestrated health AI platforms built on Roots' patented invention
- **Punitive Damages**
  For willful, malicious conduct in furtherance of commercial fraud and IP theft

# II. JURISDICTION AND VENUE

1. **Subject Matter Jurisdiction**
   This Court has subject matter jurisdiction over this action pursuant to:

- **28 U.S.C. § 1331**, as this case arises under federal law;
- **28 U.S.C. § 1338(a)**, as the claims concern patents and intellectual property governed by federal statutes, including infringement under **35 U.S.C. § 271** and related damages under **35 U.S.C. § 284**;
- **28 U.S.C. § 1498(a)**, for claims related to unauthorized use of patented technologies by or for the United States government.

2. **Supplemental Jurisdiction**
   The Court has supplemental jurisdiction over related state-law claims, including civil conspiracy, unjust enrichment, and fraud, pursuant to **28 U.S.C. § 1367**, as they arise from the same set of facts and form part of the same case or controversy.
3. **Venue is Proper in the Southern District of New York (SDNY)** under:

- **28 U.S.C. § 1391(b)** because a substantial part of the events giving rise to the claims— including acts of infringement, use, marketing, and profit realization—occurred within this judicial district;
- **28 U.S.C. § 1400(b)** because multiple Defendants, including Microsoft Corporation, Amazon Web Services, Meta Platforms, and Netflix, maintain offices, servers, commercial operations, and substantial business contacts in New York State and this District;
- Defendants actively solicit customers and operate infrastructure that deploys infringing AI orchestration systems accessible and monetized in this District;
- Declaratory relief is also sought against corporations and conspirators whose actions directly affect commerce and intellectual property rights in this District.

4. **Venue Transfer from Utah Is Inappropriate**
   Plaintiffs assert that continued venue in the District of Utah would prejudice fair adjudication due to:

- Documented avoidance of patent and conspiracy claims by Utah courts involving overlapping defendants;

- Local law firm entanglement with state-sponsored AI and healthcare initiatives;
- State-level conflict of interest tied to Utah's investment in entities profiting from the misappropriation of Plaintiffs' patented technologies;
- The neutrality and national business scope of SDNY offers a more impartial venue, particularly for claims involving nationwide technology providers and government contractor systems.

Accordingly, this District is not only proper but necessary to ensure a fair and complete resolution of federal patent, conspiracy, and licensing claims across a multi-defendant enterprise that spans commercial and government use of Roots Informatics' patented infrastructure.

# III. PARTIES

## Plaintiffs

1. **Roots Informatics LP**
2. A limited partnership organized under the laws of UTAH, with its principal place of business NOW located at 1809 Weaver Road, Kingstown, North Carolina 28150. Roots Informatics is the lawful owner of U.S. Patent No. 11,972,849 and is engaged in the development of patented orchestration infrastructure for artificial intelligence and data systems. Roots holds all substantial rights to the asserted patent.
3. **Thurman Brown Consultant Inc.**
4. A New York-based consultancy firm specializing in AI strategy, infrastructure design, and behavioral health systems, owned and operated by Thurman Brown. The firm was instrumental in the creation, commercialization, and defense of Roots Informatics' intellectual property.
5. **Thurman Brown (Pro Se, Individually and as Agent for Plaintiffs)**
   Founder and managing principal of both Roots Informatics LP and Thurman Brown Consultant Inc., acting pro se in this matter and as the inventor of the core technology at issue. Brown maintains standing to assert claims under federal patent statutes and is a U.S. citizen domiciled in North Carolina.

## Corporate Defendants

4. **Microsoft Corporation** – Washington-based multinational corporation; maintains significant commercial operations and Azure infrastructure within New York State.
5. **Netflix, Inc.** – California-based media and AI infrastructure company with commercial streaming services accessible throughout New York and integrated orchestration pipelines operating in this District.
6. **OpenAI, Inc.** – California-based artificial intelligence research and deployment company, whose GPT APIs and enterprise agent infrastructure are marketed, deployed, and monetized across New York.

7. **NVIDIA Corporation** – Delaware corporation headquartered in California, actively marketing Rubin AI infrastructure and DGX systems used by New York-based enterprises and institutions.

8. **Amazon Web Services (AWS)** – Subsidiary of Amazon.com, Inc., operating extensive cloud, ML, and orchestration services through AWS East Region (Northern Virginia & NYC).

9. **Meta Platforms, Inc.** – Parent company of Facebook and Llama AI models; headquartered in California with key data and infrastructure relationships in New York.

10. **Palantir Technologies Inc.** – Public data analytics and AI firm; maintains contracts with federal agencies and financial institutions in this District via Foundry platform deployments.

11. **Databricks, Inc.** – Enterprise AI and ML company headquartered in San Francisco; Unity Catalog and MLflow tools used by clients within the Southern District of New York.

12. **Warner Bros. Discovery, Inc.** – Media conglomerate with AI content automation relationships linked to infringing orchestration use; operates in NY through multiple subsidiaries.

13. **Beechtree Diagnostics LLP & Beechtree Molecular LLC** – Utah-based healthcare entities alleged to have knowingly deployed and profited from patented Roots IP in violation of federal law.

## Government Use Claimants (For § 1498(a))

14. **The United States of America** – Named as a defendant under 28 U.S.C. § 1498(a) for direct and authorized use of the patented system by federal agencies and contractors without compensation.

15. **Agencies** – Department of Defense (DoD), Department of Health and Human Services (HHS), Department of Veterans Affairs (VA), Centers for Disease Control and Prevention (CDC), and the Department of Justice (DOJ), all named for their involvement in orchestrated health analytics or multi-source lab data infrastructure relying on Roots-patented systems.

16. **Government Contractors** – Including, but not limited to, AWS GovCloud, Booz Allen Hamilton, and Palantir Technologies Inc., all of whom participated in the development, deployment, or support of infringing orchestration systems under contract with the U.S. government.

## Utah-Based Individual and Legal Defendants

17. **Justin Peck** – Utah resident and former associate of Roots Informatics, alleged to have coordinated internal conspiracy to dissolve the company and divert its intellectual property.

18. **Mike Isom** – Utah resident, linked to the unauthorized patent filings and commercialization efforts via Beechtree Diagnostics.
19. **Michael Murano & Nathan Peters** – Utah-based individuals who acted in concert with Isom and Peck to restructure ownership and profit from Roots IP.
20. **Spencer Fane LLP** – Utah legal firm alleged to have knowingly facilitated the corporate fraud and false dissolution documents.
21. **Gregory R. Lunt & Scott Awerkamp (Attorneys)** – Counsel alleged to have participated directly in fraudulent patent filings, legal misrepresentations, and obstruction of IP enforcement.

later.)

**Plaintiffs:**

- Roots Informatics LP
- Thurman Brown Consultant Inc.
- Thurman Brown Consultant LLC

**Defendants (Grouped):**

1. **Big Tech Commercial Deployment Defendants**
   - Microsoft Corporation
   - Netflix, Inc.
   - OpenAI, Inc.
   - NVIDIA Corporation
   - Amazon Web Services (AWS)
   - Meta Platforms, Inc.
   - Adobe Inc.
   - Alphabet Inc. / Google LLC
   - Warner Bros. Discovery
2. **Utah Engineering and Replication Defendants**
   - Beechtree Diagnostics LLP
   - Beechtree Molecular LLC
   - Mike Isom
   - Justin Peck
   - Michael Murano
   - Nathan Peters
3. **Attorney Defendants (Conspiracy Enablers)**
   - Spencer Fane LLP
   - Scott Awerkamp
   - Gregory R. Lunt

# IV. ENTERPRISE THEORY – UNIFIED COMMERCIAL CONSPIRACY

## A. Overview

Plaintiffs allege that the named Defendants—ranging from individual actors, legal firms, and health-tech startups to multinational cloud, media, and AI companies—operated as a **functionally integrated commercial enterprise**. This enterprise's shared objective was the **unauthorized appropriation, rebranding, and deployment of the patented orchestration-layer infrastructure** developed by Roots Informatics LP and protected by U.S. Patent No. 11,972,849 (the "Roots Patent").

This enterprise acted in violation of federal law, including:

- **35 U.S.C. § 271(a)-(c)** (patent infringement);
- **18 U.S.C. § 1962(c)-(d)** (civil conspiracy and enterprise claims, if later amended);
- and common law torts including fraud, conversion, unjust enrichment, and interference with contract.

---

## B. Enterprise Structure and Coordination

### 1. Utah-Based Engineering and IP Reassignment Arm

- **Entities Involved**: Beechtree Diagnostics LLP, Beechtree Molecular LLC, and individual actors including Justin Peck, Mike Isom, Gregory R. Lunt, and Scott Awerkamp.
- **Conduct**:
  - Orchestrated the **fraudulent dissolution** of Roots Informatics LP.
  - Engaged in **fraudulent patent filings**, recharacterizing Roots' proprietary systems as independent inventions.
  - Served as **gateways for ingestion pipeline testing and orchestration prototyping**, laying the groundwork for downstream deployment.
  - Used Utah's court system and legal firms (Spencer Fane LLP) to delay, deflect, or dismiss IP enforcement actions.

### 2. Commercial Deployment Arm – Big Tech Entities

- **Entities Involved**: Microsoft, OpenAI, Netflix, NVIDIA, Amazon Web Services, Meta, Adobe, Palantir, and Databricks.
- **Conduct**:
  - Deployed enterprise-scale orchestration infrastructures that **mirror and materially replicate** the claims of the Roots Patent.

- Entered into **cross-platform collaborations** (e.g., Microsoft + OpenAI, Netflix + Adobe) that rely on **AI agent orchestration, memory routing, modular AI workflows**, and **contextual control logic**—the very elements claimed in the Roots Patent.
- Monetized the patented functionality without entering into any licensing negotiations or paying royalties to Plaintiffs.

## C. Indicators of Common Coordination and Knowledge

- **Shared Technical Terminology**: Terms such as *contextual orchestration*, *agentic inference*, *real-time model switching*, and *ingestion-first pipelines* appear across Defendant products **after** Roots' public disclosures and filings.
- **Temporal Alignment**: The release of infringing systems across different Defendants occurred in a **synchronized fashion** following the Utah conspiracy and federal patent publication.
- **Product Architecture Similarities**:
  - Microsoft's Copilot and Azure ML match GitHub workflows described by Netflix and OpenAI.
  - NVIDIA's Rubin orchestration mirrors pipeline architectures built using Utah-origin components.
  - Palantir's Foundry decision graphs and Databricks' MLflow routing framework reflect nearly identical orchestrated inference logic.
- **Enterprise Relationships**:
  - Joint development and licensing between Defendants (e.g., OpenAI + Microsoft; Adobe + Netflix) demonstrate mutual awareness and technological reliance on orchestration functions now in dispute.
  - These overlapping alliances cannot be coincidental and show **enterprise-level alignment** across entities with otherwise independent commercial strategies.

## D. Economic Motive and Unjust Gain

- **Royalty Avoidance**: Defendants collectively avoided **hundreds of millions in royalties** by deploying the Roots orchestration architecture without licensing or attribution.
- **Market Domination**: By consolidating control over the orchestration layer of AI systems—**the functional heart of model deployment and coordination**—Defendants positioned themselves as foundational infrastructure providers, locking in customers and foreclosing competition.
- **Exclusion of Inventor**: The coordinated effort across Utah-based conspirators and enterprise-scale commercial actors **systematically excluded** Roots Informatics from recognition, credit, and compensation.

### E. Legal Consequences and Required Relief

Plaintiffs respectfully assert that the above-described acts give rise to claims for:

- **Joint and several liability** among all named Defendants;
- **Treble damages** for willful infringement and civil conspiracy;
- **Constructive trust and accounting** for all revenues derived from the deployment of patented orchestration functionality;
- **Compensatory and punitive damages**;
- **Equitable relief** including licensing orders, profit disgorgement, and enjoined use until compliance is achieved.

# V. SPECIFIC STATEMENTS OF CLAIM

Each Defendant's conduct is outlined in the following standardized format, establishing individual and joint liability for direct, contributory, and induced infringement of U.S. Patent No. 11,972,849.

### Format:

1. **Defendant Name and Jurisdiction**
2. **Infringement Summary**
3. **Detailed Claim Overlaps** *(with claim mapping table per Defendant)*
4. **Supporting Exhibits**
5. **Legal Violations Cited**
6. **Willfulness and Notice**
7. **DAMAGES & EQUITABLE RELIEF**
8. **PRAYER FOR RELIEF**

*See already completed entries for Microsoft, Netflix, OpenAI, etc., and extend using this format for Palantir, Adobe, AWS, NVIDIA, Meta, Databricks, Beechtree, and Warner Bros.*

---

# VI. CONSPIRACY AND AIDING/ABETTING CLAIMS

### Legal Basis:

- **18 U.S.C. § 371** – Federal conspiracy to defraud and commit offense against the United States (applicable where federal contractors were involved under §1498).
- **Restatement (Second) of Torts §§ 876(a) and 876(b)** – Liability for assisting or encouraging wrongful acts.
- **Common Law Conspiracy (NY)** – Joint tortfeasor doctrine based on knowing participation, shared purpose, and material assistance.

**Attorney Defendants' Role:**

- **Spencer Fane LLP**, **Scott Awerkamp**, and **Gregory Lunt**:
    - Sent letters and filed documents premised on false legal status of Roots Informatics' dissolution, knowingly misleading courts, regulators, and stakeholders.
    - Acted as legal enablers of the fraudulent scheme, obscuring rightful patent ownership and facilitating unauthorized commercialization of proprietary technology.

---

# VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

---

# VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1. A declaratory judgment that each Defendant has infringed U.S. Patent No. 11,972,849;
2. A judgment for reasonable royalties or, where appropriate, disgorgement of profits;
3. Enhanced damages for willful infringement under 35 U.S.C. § 284;
4. Permanent injunctive relief against further unlicensed use, with structured licensing terms to avoid disruption;
5. Punitive damages for malicious conspiracy and aiding/abetting wrongful IP conversion;
6. An order for full accounting of all revenues derived from use of the patented orchestration system;
7. Award of attorneys' fees, costs, and expert expenses under 35 U.S.C. § 285;
8. Any further relief the Court deems just and proper.

---

# IX. ENTERPRISE THEORY – UNIFIED COMMERCIAL CONSPIRACY

## A. Overview

Plaintiff Roots Informatics LP alleges that all Defendants—individual, corporate, and legal—acted as part of an interrelated commercial enterprise to unlawfully appropriate and deploy orchestration technologies covered by U.S. Patent No. 11,972,849. This "enterprise" coordinated across sectors

and states, from Utah to New York to California, and enabled the monetization of protected infrastructure without license or attribution.

---

## B. Enterprise Structure

### 1. Utah Nexus: Engineering and Ingestion Arm

- **Entities Involved**: Beechtree Diagnostics LLP, Beechtree Molecular LLC, Justin Peck, Mike Isom, Gregory Lunt, Spencer Fane LLP.
- **Function**: Engineered early replication of Roots' orchestration systems, misrepresented legal status of the patent originator, and built ingestive routing infrastructure used to "seed" downstream use by larger tech platforms.

### 2. Big Tech Nexus: Commercial Deployment Arm

- **Entities Involved**: Microsoft, OpenAI, Netflix, NVIDIA, AWS, Meta, Adobe, Palantir, Databricks, Warner Bros.
- **Function**: Deployed model orchestration, inference routing, memory-based AI workflows, and ingestion-based personalization systems matching the Roots Patent claims. Leveraged Utah-built ingestion assets and mirrored Roots' invention in product offerings.

---

## C. Common Infrastructure and Coordination

- **Technical Similarity**: Shared usage of terms like "model-first orchestration," "dynamic routing," "context-aware inference," and "multi-agent AI" after Roots' public disclosures.
- **Cross-Institution Integration**: Entities entered joint ventures (e.g., Microsoft + OpenAI), reusing orchestration systems without seeking license.
- **Temporal Proximity**: Product launches aligned with known internal access to Roots demonstrations and pending patent publications.

---

## D. Economic Motive and Shared Benefit

- **Royalty Avoidance**: Estimated avoidance exceeds $800 million in cumulative royalties across Defendants.
- **Covert Attribution**: Utah-based parties were positioned as original inventors despite direct knowledge of Roots' ownership.
- **Structural Suppression**: No licensing attempts were made; instead, legal and technical routes were used to obscure patent provenance.

## E. Legal Theory of Liability

Defendants form an association-in-fact enterprise under:

- **Federal Conspiracy Doctrine** (via 18 U.S.C. § 371 and § 1962(c));
- **New York Common Law Joint Tortfeasor Doctrine**;
- **Restatement of Torts § 876** (aiding and abetting);
- **Alternative RICO Theory** (reserved pending discovery showing intent, concealment, and repeated commercial misrepresentation).

Each Defendant either:

- Directly infringed;
- Aided/abetted infringement;
- Conspired to suppress rightful origin of technology;
- Reaped unjust benefit from joint use of misappropriated IP.

## F. Continuing Threat

- Roots Informatics continues to suffer ongoing harm as its architecture becomes embedded across enterprise systems.
- The ongoing nature of orchestration-scale deployments means that without court intervention, further dilution and misappropriation will continue across industries.
- Immediate injunctive relief, accounting, licensing structure, and declaratory rulings are required to arrest and remediate this harm.

# COUNT IV – CIVIL CONSPIRACY TO MISAPPROPRIATE INTELLECTUAL PROPERTY

**(Against All Defendants)**

## A. Legal Basis

Plaintiff Roots Informatics LP asserts this claim under New York common law and applicable federal doctrines of secondary liability. A civil conspiracy exists where:

1. Two or more persons or entities form an agreement—express or implied;
2. The object of the agreement is unlawful, or a lawful end is pursued through unlawful means;

3. One or more overt acts are committed in furtherance of the conspiracy; and
4. Plaintiff suffers injury as a direct and proximate result.

Under New York law, civil conspiracy is actionable when tied to an independent tort—in this case, misappropriation of intellectual property, unfair competition, fraudulent concealment, and related acts of inducement and unauthorized commercialization.

---

## B. Factual Allegations

Defendants—including but not limited to BeechTree Diagnostics LLP, BeechTree Molecular LLC, OpenAI, Adobe Inc., Netflix Inc., Warner Bros. Discovery Inc., Microsoft Corporation, Meta Platforms Inc., NVIDIA Corporation, Databricks Inc., Palantir Technologies Inc., Amazon Web Services, and associated legal and technical facilitators—entered into a coordinated scheme to misappropriate Plaintiff's proprietary orchestration-layer infrastructure, protected under U.S. Patent No. 11,972,849.

Specifically, the conspiracy involved:

1. **Unauthorized Access and Extraction**:
   BeechTree and associated Utah-based actors obtained proprietary architecture documents, ingestion logic, and orchestration models developed by Plaintiff.
2. **Replication and Engineering Deployment**:
   Defendants reverse-engineered Roots' patent-protected orchestration systems and embedded them into AI-driven platforms for healthcare, content delivery, cloud services, and enterprise AI.
3. **Scalable Commercialization**:
   Systems utilizing infringing orchestration logic were jointly deployed via cloud infrastructure, media platforms, AI APIs, and clinical data systems across sectors.
4. **Deliberate Concealment and Denial**:
   Despite formal notification, Defendants collectively refused to acknowledge patent ownership, avoided licensing engagement, and continued deployment to gain early mover advantages.

**Representative Overt Acts:**

- 2023–2024: BeechTree Diagnostics incorporated Roots' ingestion pipelines into its product roadmap.
- 2024–2025: Netflix, Adobe, and Warner Bros. orchestrated AI personalization and rendering engines based on patented orchestration behavior.
- 2025: OpenAI deployed plugin orchestration and GPT agent coordination matching Roots' patent disclosures.
- 2025–2026: Microsoft integrated orchestration control logic into Azure Copilot, GitHub Copilot, and Fabric Analytics, post-notice.

- Coordinated promotional materials and technical blogs described orchestration architecture using language identical to Roots' pre-AI orchestration claims.
- Legal counsel (Spencer Fane LLP, Gregory Lunt, and Scott Awerkamp) aided the conspiracy by supporting fraudulent dissolution attempts and shielding Defendants from licensing claims.

## C. Harm to Plaintiff

As a direct result of the conspiracy:

- Plaintiff was **deprived of rightful licensing revenues**, projected at over **$900 million** across affected sectors.
- Plaintiff's **competitive position in the orchestration-layer market**—both in AI healthcare and infrastructure—was eroded.
- The **value of U.S. Patent No. 11,972,849** has been materially diluted by widespread unlicensed commercial adoption.
- Ongoing infringement **threatens future strategic partnerships**, damages goodwill, and imposes long-term structural injury to Roots Informatics LP's business model.

## D. Relief Requested

Plaintiff respectfully requests that the Court:

1. **Find all named Defendants jointly and severally liable** under civil conspiracy principles;
2. Award **compensatory and consequential damages** in an amount to be determined at trial;
3. Award **punitive damages** to reflect the knowing, intentional, and coordinated nature of the misconduct;
4. Grant **attorney's fees, costs, expert witness expenses,** and **pre- and post-judgment interest** under applicable law;
5. Enter such **further relief** as the Court deems just and proper, including declaratory and equitable remedies to deter ongoing misuse and compel licensing.

# Jurisdictional Statement: Utah-Based Defendants

**Defendants**: BeechTree Diagnostics LLP, BeechTree Molecular LLC, Isom Technical Advisors, and related individuals (including Mike Isom, Justin Peck, and counsel Gregory Lunt and Scott Awerkamp)
**Court**: U.S. District Court for the Southern District of New York (SDNY)
**Legal Theories Invoked**:

- **Fed. R. Civ. P. 4(k)(1)(A)** – New York's long-arm jurisdiction
- **N.Y. CPLR § 302(a)(1) & (3)(ii)** – Business transactions and tortious conduct causing foreseeable injury within NY
- **Conspiracy jurisdiction** (e.g., *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260)
- **Effects test** (*Calder v. Jones*, 465 U.S. 783 (1984))
- **Nationwide jurisdiction under Fed. R. Civ. P. 4(k)(2)**
- **Alter ego and veil piercing principles**

---

# I. Specific Jurisdiction via Purposeful Commercial Activities in New York

Utah-based Defendants BeechTree Diagnostics LLP and BeechTree Molecular LLC are subject to specific jurisdiction under CPLR § 302(a)(1) because they:

1. **Targeted New York markets** by marketing orchestration-enabled clinical platforms (e.g., *BeechTree One*, *ClinicSync AI*) to urgent care groups, imaging providers, and AI healthcare vendors operating in this District;
2. **Entered contracts and partnerships** with New York-based healthcare infrastructure providers, including cloud service integrators and analytics brokers with known operations in Manhattan;
3. **Deployed orchestration frameworks** into health systems and clinics located in the Southern District, thereby triggering infringing use within this forum and causing commercial harm to Plaintiff's interests.

These constitute "purposeful availment" of New York's markets and confer specific jurisdiction under *International Shoe* and CPLR § 302(a)(1).

---

# II. Tortious Acts with Foreseeable Injury in New York

**(CPLR § 302(a)(3)(ii); Calder Effects Test)**

Even if orchestrated from outside New York, Defendants' acts of:

- Intellectual property misappropriation,

- Unfair competition, and
- Conspiracy to infringe

…were carried out with the **knowledge that their conduct would cause injury in New York**, where:

- Plaintiff's **AI infrastructure partnerships** were in advanced negotiations with NY-based studios, healthcare firms, and cloud integrators;
- Plaintiff suffered **lost business opportunities, licensing disruptions, and reputational harm** as a result of Utah Defendants' rebranded orchestration tools reaching the New York market via co-conspirators.

This satisfies both CPLR § 302(a)(3)(ii) and the Supreme Court's *Calder* "effects" test for purposeful direction into a forum.

## III. Conspiracy Jurisdiction: In-District Acts by Co-Conspirators

**(See *Chrysler Capital*, 778 F. Supp. 1260 (S.D.N.Y. 1991))**

Under the conspiracy jurisdiction doctrine:

1. **Overt acts in furtherance of the scheme** were committed in New York by co-defendants OpenAI, Netflix, Microsoft, Adobe, and Palantir, through deployment of infringing orchestration pipelines;
2. **Utah defendants had actual or constructive knowledge** that their orchestration modules would be commercialized by entities headquartered or operating in this District;
3. Evidence—including **shared product architecture**, **contemporaneous market launches**, and **non-responsiveness to licensing offers**—shows active coordination.

The conspiracy thus has a sufficient nexus to SDNY to support personal jurisdiction over all co-conspirators.

## IV. Nationwide Jurisdiction Under Rule 4(k)(2)

To the extent any Utah-based defendant argues that New York lacks jurisdiction, Plaintiff asserts jurisdiction under Fed. R. Civ. P. 4(k)(2) because:

1. **The claims arise under federal law** (patent infringement and unfair competition);
2. **Defendants engaged in conduct causing U.S.-wide harm** via orchestration technology deployed to national cloud platforms (e.g., AWS, Azure, Palantir Foundry);

3. **No state other than New York has greater ties** to the infringing conduct, given New York's role as an epicenter for orchestration-based deployments and Plaintiff's base of commercial activities.

---

# V. Corporate Veil Piercing and Alter Ego Jurisdiction

Plaintiff alleges that:

- **BeechTree Diagnostics LLP and BeechTree Molecular LLC** were created as **co-branded shell entities**, under common ownership and management, to unlawfully replicate and distribute orchestration engines originally developed by Plaintiff;
- The **same engineering teams, investors, and business registrants** are used across both entities;
- **Utah individuals**, including Mike Isom and Justin Peck, serve as technical architects of infringing tools marketed through NY-facing channels;
- These entities were intentionally structured to **conceal the origin of the IP** and **frustrate enforcement**—justifying veil piercing and alter ego jurisdiction.

The Court may hold the Utah-based entities jointly and severally liable for infringement as part of a unified commercial enterprise.

---

# PRAYER FOR RELIEF ON JURISDICTION

Plaintiff respectfully asks this Court to enter findings that:

1. **All Utah-based defendants** are subject to personal jurisdiction in the Southern District of New York;
2. They are **properly joined under Rule 20** as co-conspirators and joint tortfeasors;
3. The claims **arise from their purposeful contacts** and coordination with co-defendants acting within this District;
4. Their inclusion is **necessary to achieve full, fair, and efficient adjudication** of this complex, multi-party IP dispute;
5. This Court has **authority to enjoin and award damages** against Utah-based parties who participated in nationwide infringement and conspiracy.

# Jurisdictional Statement as to Utah-Based Defendants

(*BeechTree Diagnostics LLP, BeechTree Molecular LLC, and affiliated persons/entities*)

Plaintiff asserts that this Court has **personal jurisdiction** over all Utah-based Defendants pursuant to:

- **Fed. R. Civ. P. 4(k)(1)(A)** – Long-arm jurisdiction under **N.Y. CPLR § 302(a)**
- **N.Y. CPLR § 302(a)(1) and (3)** – Transactions of business and tortious acts causing injury within New York
- **Conspiracy jurisdiction** doctrine recognized in the Second Circuit
- **Effects test** under *Calder v. Jones*, 465 U.S. 783 (1984)

## I. Specific Jurisdiction via Commercial Activities in New York

Defendants **BeechTree Diagnostics LLP** and **BeechTree Molecular LLC** are subject to jurisdiction in this District because:

1. They **targeted the New York market** by marketing orchestration-enabled diagnostic tools to urgent care centers, imaging providers, and AI-driven clinical software vendors operating within New York
2. They **contracted with healthcare data infrastructure providers headquartered in Manhattan**, including cloud service brokers and data-sharing consortiums known to operate in the SDNY
3. BeechTree's orchestration-based engines (e.g., *BeechTree One*, *ClinicSync AI*) were **deployed into hospitals and clinics in New York**, thereby causing commercial harm within the District

These constitute purposeful availment of New York's markets under **CPLR § 302(a)(1)** and confer specific jurisdiction over the Utah defendants.

## II. Tortious Acts with In-District Injury

(*CPLR § 302(a)(3)(ii)*)

Even if the Utah defendants acted from out-of-state, they committed **tortious acts (IP theft, unfair competition, conspiracy to infringe)** that:

- Caused foreseeable injury in New York, where Plaintiff's business prospects, licensing negotiations, and commercial deployments were damaged
- Targeted Plaintiff's orchestration infrastructure, which had **active pre-licensing negotiations with NY-based studios and AI vendors**, subsequently foreclosed by the Utah defendants' conduct
- Were carried out **with knowledge** that the effects would be felt within this District, as their replicated orchestration products were **licensed to and co-developed with companies active in Manhattan**

Accordingly, jurisdiction is proper under **CPLR § 302(a)(3)(ii)** and the *Calder* effects test.

## III. Conspiracy-Based Jurisdiction in the Second Circuit

(*See: Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991)*)

Utah defendants are also subject to SDNY jurisdiction under the **co-conspirator theory**, whereby:

1. A **substantial overt act in furtherance of the conspiracy** occurred in New York—e.g., commercial deployment of infringing orchestration systems by partners such as OpenAI, Netflix, Adobe, and Microsoft in the District
2. The Utah defendants **knew or should have known** their orchestration infrastructure was to be monetized and distributed by in-District co-conspirators
3. Their **intentional non-response to licensing offers**, coupled with shared product architecture and data channels, shows **coordinated misconduct** with foreseeable NY-based effects

These allegations support long-arm jurisdiction under New York law and satisfy due process under federal standards.

## IV. Nationwide Jurisdiction via Contributory and Induced Infringement

(*Fed. R. Civ. P. 4(k)(2)*)

Should any Utah-based defendant contest jurisdiction under New York's long-arm statute, Plaintiff asserts jurisdiction under **Rule 4(k)(2)** based on:

1. The federal nature of the underlying claim (patent infringement, unfair competition)
2. The Utah defendants' purposeful actions contributing to infringement in the U.S. market
3. The absence of any state in which their contacts are more substantial than those in New York, where their orchestration engines were monetized by downstream partners

## V. Veil Piercing and Alter Ego Jurisdiction

Plaintiff alleges that:

- **BeechTree Diagnostics LLP** and **BeechTree Molecular LLC** function as **corporate alter egos**, jointly managed and co-developed for the purpose of concealing ownership of misappropriated technology

- The entities were **formed in tandem**, share development teams and orchestration deployment pipelines, and act in concert to commercialize the same infringing technologies
- Utah-based individuals (e.g., Isom) serve as **technical architects and coordinators** between Utah operations and NY-deployed orchestration platforms

The Court may pierce the corporate veil or apply **agency and alter ego theories** to assert jurisdiction over all such parties based on their integration into a unitary infringement enterprise.

---

## PRAYER FOR RELIEF ON JURISDICTION

Plaintiff respectfully asks this Court to find that:

1. All Utah-based defendants are **subject to personal jurisdiction in the SDNY**
2. They are **properly joined under Rule 20** as co-conspirators and joint tortfeasors
3. The claims against them **arise from their purposeful acts** giving rise to injury in this District
4. Their presence is essential to full and fair adjudication of this commercial IP dispute

---

# VERIFICATION AND DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I, Thurman Brown, declare under penalty of perjury that:

1. I am the Founder and Managing Partner of Plaintiff Roots Informatics LP.
2. I have reviewed the foregoing Complaint and all factual allegations therein.
3. To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations contained herein are true and correct.

Executed this __19__ day of __January__, 2026

At: __Clerk of the Court__

By: __THURMAN J BROWN__

**Thurman Brown**
Founder & Managing Partner
Roots Informatics LP
Plaintiff Pro Se or through Counsel (as applicable)
📧 ThurmanBrownConsultant@gmail.com
📞 (704) 734-7424

# CERTIFICATE OF SERVICE

I hereby certify that on this __19__ day of __January__ , 2026, a true and correct copy of the foregoing Complaint was served upon all Defendants by:

- Electronic mail (to counsel where known)
- Certified U.S. Mail, Return Receipt Requested
- Federal court ECF system (if counsel has appeared)

Executed by:

_THURMAN J BROWN_

Thurman Brown
On behalf of Roots Informatics LP

# RESPECTFULLY SUBMITTED,

Dated: __1/19/2026__
Kingstown, NC

**By:** _THURMAN J BROWN_

**Thurman Brown**
Founder & Managing Partner
Roots Informatics LP
Plaintiff Pro Se
📧 ThurmanBrownConsultant@gmail.com
📞 (704) 734-7424

# EXHIBIT INDEX

| Exhibit No. | Description |
|---|---|
| **A** | U.S. Patent No. 11,972,849 (Roots Informatics Patent) |
| **B** | Technical Whitepapers and Architecture Diagrams of Accused Systems |
| **C** | Public Product and Developer Documentation (e.g., OpenAI, Databricks, Netflix) |
| **D** | Financial Earnings Reports of Defendants (2024–2026) |
| **E** | Third-Party Integration Evidence (Adobe, NVIDIA, Warner Bros.) |
| **F** | Timeline of Notice, PSAs, and Infringement Awareness |
| **G** | Licensing Correspondence and Communications |
| **H** | Utah State Filings: BeechTree and Affiliated Entities |
| **I** | Promotional Materials Using Patented Orchestration Terminology |
| **J** | Public Announcements of Joint Ventures and Product Launches |
| **K** | Comparison Charts Mapping Roots Claims to Accused Products |
| **L** | Government Contracts and Usage of Alleged Infringing Infrastructure |
| **M** | Expert Declarations (anticipated under Rule 26(a)(2)) |

*Plaintiff reserves the right to supplement this Exhibit Index as discovery proceeds.*

---

# CASE LAW CITED

The following authorities are relied upon in the jurisdictional and conspiracy claims of this Complaint:

## Federal Cases

- **Calder v. Jones**, 465 U.S. 783 (1984)
  *(Effects test for specific jurisdiction over out-of-state defendants.)*
- **Chrysler Capital Corp. v. Century Power Corp.**, 778 F. Supp. 1260 (S.D.N.Y. 1991)
  *(Co-conspirator jurisdiction under New York long-arm statute.)*
- **Akro Corp. v. Luker**, 45 F.3d 1541 (Fed. Cir. 1995)
  *(Specific jurisdiction over patent claims where defendants direct infringing conduct into forum.)*
- **Beverly Hills Fan Co. v. Royal Sovereign Corp.**, 21 F.3d 1558 (Fed. Cir. 1994)
  *(Infringing goods delivered into forum supports jurisdiction.)*
- **DSU Medical Corp. v. JMS Co., Ltd.**, 471 F.3d 1293 (Fed. Cir. 2006)
  *(Standard for induced infringement under 35 U.S.C. § 271(b).)*
- **Global-Tech Appliances, Inc. v. SEB S.A.**, 563 U.S. 754 (2011)
  *(Willful blindness and knowledge standard for induced infringement.)*

**State Law and Common Law**

- **Kashi v. Gratsos**, 790 F.2d 1050 (2d Cir. 1986)
  *(Civil conspiracy claim under New York law.)*
- **Alexander & Alexander of N.Y., Inc. v. Fritzen**, 114 A.D.2d 814 (1st Dep't 1985)
  *(Joint tortfeasor and aiding-and-abetting liability under New York law.)*
- **Restatement (Second) of Torts § 876**
  *(Liability for aiding and abetting a tortfeasor.)*